UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MORGAN STANLEY & CO., INC. ) <br> AUCTION RATE SECURITIES ) <br> DERIVATIVE LITIGATION ) <br> ──────────────────────────────── ) <br>  ) <br> This Document Relates To: ) <br>  ) <br> ALL ACTIONS ) <br> ──────────────────────────────── ) | Lead Case No. 08 Civ. 7587 (AKH) <br><br> (Derivative Action) <br><br> **Oral Argument Requested** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO RECONSIDER COURT'S ORDER OF JUNE 24, 2009**

KAHN SWICK & FOTI, LLC
Lewis S. Kahn
Albert M. Myers
Kevin Oufnac
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

Michael Swick
12 East 41st Street—12th Floor
New York, NY 10017
Telephone: (212) 696-3730
*Attorneys for Plaintiff Louisiana Municipal Police
Employees Retirement System*

ROY JACOBS & ASSOCIATES
Roy L. Jacobs
60 East 42nd Street
New York, NY 10165
Telephone: (212) 685-0969

PASKOWITZ & ASSOCIATES
Laurence D. Paskowitz
60 East 42nd Street
New York, NY 10165
Telephone: (212) 685-0969
Fax: (212) 685-2306

*Attorneys for Plaintiff Terry G. Thomas*

Pursuant to Civil Local Rule 6.3 and Fed. R. Civ. P. Rule 59(e), Plaintiffs Louisiana Municipal Police Employees Retirement System ("MPERS") and Terry G. Thomas ("Thomas") (collectively, "Plaintiffs") file this Motion for Reconsideration of the Court's Order of June 24, 2009 (the "Order").

## PRELIMINARY STATEMENT

In ruling that demand on the Morgan Stanley Board of Directors was not excused as futile, this Court incorrectly held that, to satisfy the standard of demand futility, Plaintiffs effectively must plead that *all* members of the Board were incapable of objectively considering a demand—i.e., that the availability of one or two Board members as to whom there was no question of independence would render demand not futile. This holding was in derogation of well-established principles of Delaware law that demand is excused when a ***simple majority*** of a Board is alleged to be conflicted or otherwise incapable of objectively considering a demand. *Infra*, part II. Because the Court seemed prepared to accept that at least six members of Morgan Stanley's 12-member Board were not independent (two directors for being inside, employee directors, and four members for having served on Morgan Stanley's Audit Committee and having disregarded "red flags" putting them on notice of the misconduct), this holding may have been outcome determinative and therefore require reversal.

To the extent that the Court based its ruling that demand was not excused on a finding that the four members of the Audit Committee do not face a substantial likelihood of liability for disregarding "red flags" that the misconduct complained of in 2007-2008 was underway no later than 2006 and drawing regulatory discipline by the Securities and Exchange Commission ("SEC"), Plaintiffs respectfully submit that the Court, again, erred. Contrary to the Court's interpretation, Plaintiffs do not argue that mere membership on an oversight committee is

sufficient to establish liability. Nor do Plaintiffs' allegations rely solely only on the "benefit of hindsight" with respect to what the Audit Committee would, could, or should have been aware of. To the contrary, Plaintiffs rely on specific "red flags" in 2006 regarding substantively identical misconduct concerning disclosures regarding the liquidity of the market for auction-rate securities ("ARS") to allege that the four members of the Audit Committee face a substantial likelihood of liability for failing to detect and prevent the repeat of such misconduct that occurred in the 2007-2008 time period. Putatively analogous rulings by the Honorable Leonard B. Sand in the case of *Louisiana Municipal Police Employees Retirement System v. Blankfein*, No. 08 Civ. 7605 (LBS), 2009 U.S. Dist. LEXIS 42852 (S.D.N.Y. May 19, 2009) ("*Blankfein*") are, in fact, addressed to issues that are not in litigation in either this case or in *Blankfein*, or are themselves clearly erroneous with respect to the substantive identity of the two patterns of misconduct. *Infra,* part III. These issues were briefed at length by the parties herein, raised by Plaintiffs at oral argument, but not addressed by the Court in its ruling. They, too, are outcome determinative; and in the interests of a full and fair litigation of the demand futility issues at bar, Plaintiffs respectfully request that the Court reconsider its Order and reverse it—or in the alternative issue an opinion clarifying its ruling.

## PROCEDURAL BACKGROUND

Plaintiff MPERS filed its shareholders derivative action on August 27, 2008 on behalf of nominal defendant Morgan Stanley & Co., Inc. ("Morgan Stanley" or the "Company"). Plaintiff Thomas filed a similar action approximately two weeks later on September 12, 2009. This Court consolidated the MPERS and Thomas cases by order dated November 24, 2009. Rec. Doc. 2. A Consolidated Amended Complaint ("Complaint") was jointly filed by MPERS and Thomas on February 9, 2009. Rec. Doc. 9. The Complaint alleges that although the Company was sanctioned by the Securities and Exchange Commission ("SEC") in 2006 for its illegal activities

in the auction-rate securities ("ARS") market, the officers and directors of the Company, in violation of their duties of loyalty, good faith, and due care, did not act to prevent a recurrence of the same illegal activities in the ARS market in 2007 and 2008. *See*, *e.g.*, Rec. Doc. 9, Compl. ¶¶ 4, 12-23, 96-131.

On March 23, 2009, Defendants jointly filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Rec. Doc. 11. Plaintiffs filed an opposition to the motion to dismiss on April 20, 2009. Rec. Doc. 15. A reply in further support of the motion to dismiss was thereafter filed (Rec. Doc. 19), and oral argument was held before the Court on June 23, 2009.

At the conclusion of the oral argument, the Court held:

> that a demand would not be futile because under the facts alleged, I find that there could be no reasonable doubt that the nonmanagement directors would not fairly review the conduct complained of and exercise independent and disinterested business judgment on behalf of the company. Accordingly, there will be a requirement of a demand. I will inquire how long it will take to issue such a demand and then how long a period should be allowed to respond to that demand. And either I will retain jurisdiction and allow an amended complaint hereafter, or dismiss and allow you to come back if there is a satisfactory tolling agreement. But in either case I'll continue to look at the situation.

Rec. Doc. 24 (Transcript) at 30:3-14.

The Court based its holding that demand was required on a finding that at least some members of the Morgan Board of Directors were not alleged to have been conflicted from objectively considering such a demand. *See* Rec. Doc. 24 (Transcript) at 7:25-8:10 (rejecting principle demand is futile where a simple majority of the Board is alleged to be not independent or not disinterested, and holding that the mere availability of one or two independent directors would suffice to show that demand was not futile); *id.* at 9:11-21 (same). In addition, the Court

3

relied on *Blankfein* to hold that demand was not futile with respect to the four members of Morgan Stanley's Audit Committee.  *Id*. at 14.

## ARGUMENT

### I. APPLICABLE STANDARD FOR MOTION FOR RECONSIDERATION.

Fed. R. Civ. P. 59(e) allows a motion to alter or amend a judgment, which is to be filed no later than 10 days after the entry of the judgment.  *See also* Local Rule 6.3.  "Under Rule 59(e), there are three grounds for reconsideration: (1) an intervening change in law; (2) new evidence; and (3) the need to correct a clear error of law or prevent manifest injustice." *Devinsky v. Kingsford*, No. 05 Civ. 2064, 2008 U.S. Dist. LEXIS 52675, *3 (S.D.N.Y. July 10, 2008).  A motion for reconsideration should be granted when "the moving party can point to controlling decisions or data that the court overlooked."  *Id.*  Plaintiffs submit that reconsideration is warranted because there was a clear error of law in the Court's rulings set forth above.

### II. WELL-ESTABLISHED DELAWARE LAW HOLDS THAT DEMAND IS FUTILE WHEN A MAJORITY OF THE BOARD AT ISSUE IS NOT INDEPENDENT AND NOT DISINTERESTED.

Under Delaware law, in order to establish the futility of pre-suit demand, it is necessary to allege (by particularized facts) only that a ***simple majority*** of a company's Board of Directors are incapable of objectively considering such a demand.  *See Aronson v. Lewis*, 473 A.2d 805, 814-815 & n.8 (Del. 1984) (demand is excused when a reasonable doubt is created that: (1) a ***majority*** of the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment); *Bergstein v. Texas Int'l Co.*, 453 A.2d 467, 471 (Del. Ch. 1982) (because ***five of nine*** directors approved stock appreciation rights plan likely to benefit them, entire board was interested for demand purposes and demand held futile); *Rales v. Blasband*, 634 A.2d 927, 934, 935-37 (Del. 1993) (where no business decision of

4

the Board is involved, demand is futile where the complaint raises a reasonable doubt that a *majority* of the Board could have properly exercised its independent and disinterested business judgment in responding to a demand; court excuses demand as futile where *five of eight* directors allegedly were either not independent or disinterested).

The point is nowhere better illustrated than in *Rales* itself. In that case, the plaintiff brought suit against various defendants affiliated with Danaher, which had acquired Easco, challenging a decision of the former Easco Board to use the proceeds from a sale of subordinated notes to purchase junk bonds from Drexel (thereby benefiting Drexel and Danaher), rather than for legitimate corporate purposes of Easco. *See Rales*, 634 A.2d at 931. Plaintiff alleged that demand was futile, and the court ruled, as a threshold matter, that the relevant Board to analyze (where no business decision of the Danaher Board was involved) was the Danaher Board at the time of suit—and, specifically, whether the Danaher Board, when the complaint was filed, could objectively consider a demand. *See id.* at 933-35.

The *Rales* court then proceeded to analyze the independence and disinterestedness of the Danaher Board. The Board had eight members: Steven Rales, Mitchell Rales, Sherman, Ehrlich, Caplin, Kellner, Stephenson, and Lohr. *Rales*, 634 A.2d at 936. Three of those directors—Steven Rales, Mitchell Rales, and Caplin—had been members of the Easco Board which approved the allegedly wrongful use of the note proceeds. *See id.* Therefore, because of the "potentially significant financial consequences for those directors" from the lawsuit, the court held that those three directors were incapable of impartially considering a demand by the plaintiffs. *See id.*

The court turned next to the remaining five directors. One director, Sherman, was a senior executive officer of Danaher, and his $1 million salary was subject to influence by Steven

5

Rales and Mitchell Rales, who were Danaher's Chairman of the Board and Chairman of the Executive Committee, respectively. *See Rales*, 634 A.2d at 937. Sherman, therefore, was not sufficient independent to impartially consider a demand. *See id.* Similarly, Ehrlich was a senior officer at a third-party company, Wabash, which was majority owned by Steven Rales and Mitchell Rales. *See id.* Thus, Ehrlich, too, was not independent. *See id.*

The court stopped there, after concluding that ***only five of Danaher's eight directors were incapable of objectively considering demand***. The court did not analyze the remaining three directors, and it did not ask whether a Special Committee including one or more of those remaining directors could be formed to study a demand. *See Rales*, 634 A.2d at 937. The court held, rather:

> Based on the existence of a reasonable doubt that the Rales brothers and Caplin would be free of a financial interest in such a decision [regarding response to demand], and that Sherman and Ehrlich could act independently in light of their employment with entities affiliated with the Rales brothers, we conclude that the allegations of Blasband's amended complaint establish that **DEMAND IS EXCUSED** on the Board.

*Id.*

More recently, the Delaware Chancery Court decided *Saito v. McCall*, No. 17132-NC, 2004 Del. Ch. LEXIS 205 (Del. Ch. Dec. 20, 2004). *Saito* similarly involved allegations of demand futility. In that case, plaintiff shareholders filed a shareholder derivative complaint against the officers and directors of two corporations, McKesson and HBOC, following a merger of the corporations into McKesson HBOC, alleging the commission of a fraudulent accounting scheme both before and after the merger. *See id.*, 2004 Del. Ch. LEXIS 205, at *3-*4, *7-*18. There, as here, the defendants moved to dismiss for failure to make pre-suit demand. *See id.* at *30-*36.

6

The court proceeded to analyze the allegations of demand futility with respect to the McKesson HBOC Board of Directors. The Board had 12 members, including a six-person audit committee. *See Saito*, 2004 Del. Ch. LEXIS 205, at *15-*16. The court held that all six audit committee members were alleged to have acted in bad faith in ignoring accounting issues at McKesson HBOC, and therefore to face a substantial likelihood of liability for failure of oversight sufficient to excuse demand under *Rales. See id*. at *37.

Once again, the court stopped there, holding that demand futility had been alleged based only on the audit committee's failures. *See Saito*, 2004 Del. Ch. LEXIS 205 at *36. The court specifically held:

> [D]emand on the . . . board to address these issues would directly call into question the god faith of McKesson HBOC's audit committee. The substantial likelihood of liability these directors faced for a breach of their duty of good faith ***disabled the entire McKesson HBOC board*** from mustering an independent and disinterested ***majority***.

*Id.* at *36 (emphases added).

Based on *Rales*, *Saito*, and a long line of Delaware cases, the Defendants herein, unsurprisingly, conceded that Plaintiffs need only allege demand futility with respect to a simple majority of Morgan Stanley's Board. Defendants not only conceded the point, but did so repeatedly. Plaintiffs are aware of 19 separate instances of this concession in Defendants' moving papers on their motion to dismiss.[1] At the oral argument on June 23, 2009, Defendants

---

[1] *See*, *e.g.*, Rec. Doc. 13, Memorandum In Support of Joint Motion to Dismiss, Table of Contents ("A. To Excuse Demand, Plaintiffs Must Allege with Particularity that a ***Majority*** of the Directors Are Interested or Lack Independence"; "B. The Complaint Does Not Adequately Plead that a ***Majority*** of the Directors Are Interested or Lack Independence"; "4. Plaintiffs Fail to Demonstrate a Substantial Likelihood that a ***Majority*** of the Directors Will Be Held Liable for Corporate Waste or Contribution") (emphases added); *id.* at 2 ("Where, as here, a plaintiff asserts claims based on the absence of board action, the requirement to make a demand is excused under Delaware law . . . [when] a reasonable doubt that a ***majority*** of the corporation's directors are 'interested in the subject matter of the action' or lack 'independence' from an

7

were no less forthcoming in their acknowledgment of this black-letter rule. *See* Rec. Doc. 24 (Transcript) at 23:11-13 ("And under *Rales* the only issue is whether a *majority* of the board is disinterested.") (emphasis added).

Based on the case law and Defendants' concessions, it was error for the Court to hold that anything more than a simple majority of Morgan Stanley's Board must be alleged to be incapable of impartially considering demand. *See* Rec. Doc. 24 (Transcript) at 7:25-8:10.

### III. THE COURT'S ERROR REQUIRES REVERSAL OF ITS HOLDING THAT DEMAND WAS NOT ADEQUATELY ALLEGED TO BE FUTILE.

The erroneous holding concerning the requirement of a simple majority of directors was outcome determinative, in that the Court appeared at one point to accept that at least six members of Morgan Stanley's Board were adequately alleged to have been incapable of objectively considering a demand, *see* Rec. Doc. 24 (Transcript) at 8:20-25, 9:1-9, and in that the possible availability of *some* independent directors may have caused the Court to give less analysis to the disinterestedness of the six allegedly conflicted directors than it otherwise would have. Correction of the error, therefore, also requires that the holding granting Defendants' motion to dismiss be reversed, or at least clarified, upon reconsideration.

---

interested director.") (emphasis in the original); *id.* at 3 n.3 ("Since Plaintiffs fail to establish that a *majority* of the directors cannot impartially evaluate claims against the Board, Plaintiffs likewise fail to establish that the Board cannot evaluate claims against the non-director defendants.") (emphasis added); *id.* at 7 ("Under *Rales*, the requirement to make a demand is excused . . . [when] a reasonable doubt that a *majority* of the corporation's directors are 'interested in the subject matter of the action' or lack 'independence' from an interested director.") (emphasis in the original); *id.* at 7 ("The disqualifying interest or lack of independence must afflict a *majority* of the corporation's directors.") (emphasis added); *id.* at 19 ("[t]he Court need not consider the other reasons that Plaintiffs fail to plead a substantial likelihood of liability on the part of a *majority* of the Directors") (emphasis added).

### A. Defendants Conceded that Morgan Stanley's Two Inside Directors are not Independent.

Defendants have conceded that two members of the 11 member Board are not independent. Rec. Doc. 24 (Transcript) at 8:20-25:

> THE COURT: Let's look into your allegations. They start at page 19 of your complaint. I do not think there is any dispute that Mack and Sexton will be disqualified. Mr. Markel will probably agree with that.
>
> MR. MARKEL: I agree that they are not independent outside directors, Your Honor.

Thus, under *Aronson* and *Rales*, there need only be allegations that four additional Board members are not capable of being impartial.

### B. An Additional Four Board Members are Alleged to be not Impartial.

The Court also seemed prepared to hold that the four members of Morgan Stanley's Audit Committee—Messrs. Noski, Davies, Nicolaisen, and Phillips—were not independent, in that they faced a substantial likelihood of liability for failing to ensure repeated misconduct concerning the Company's disclosures of liquidity in the ARS market in 2007 and 2008, despite the warning provided by the SEC cease-and-desist order and penalty:

> THE COURT: I read out some of the names on the audit committee. I include Kidder. It's not Kidder. But Noski, Davies, Nicolaisen, and Phillips.
>
> MR. MYERS: Yes, Your Honor.
>
> THE COURT: Having been on the audit committee and perhaps having looked at things more intensively and perhaps having a higher measure of care, I think the tenor of your arguments would have more force with them.
>
> That's six. . . .

Rec. Doc. 24 (Transcript) at 9:1-9. Similarly, the Court remarked as follows:

> THE COURT: What Mr. Myers is arguing is there was such a presumed intimate relationship between the members of the audit

9

>committee and the facts underlying this complaint that they have a larger presumption of acquaintanceship and, therefore, larger exposure to a lawsuit and, therefore, greater reluctance to independently address a demand.
>
>. . .
>
>THE COURT: All of these are quite arguable propositions.

Rec. Doc. 24 (Transcript) at 12:12-20.

The Court went on to rule that Morgan Stanley's Audit Committee members were not adequately alleged to be conflicted. In doing so, however, it is respectfully submitted that the Court gave insufficient attention to the Complaint's actual allegations and Plaintiffs' actual arguments in support of that proposition. For example, the Court relied for its holding on a finding that mere service on an oversight committee such as an audit committee "does not change the standard of director liability." Rec. Doc. 24 (Transcript) at 14:16. That, respectfully is not at issue concerning Morgan Stanley's Audit Committee. Plaintiffs do not argue that the members of the Audit Committee are subject to a higher standard of conduct, but, rather, that these directors, as members of that Committee, ***were, in fact, exposed to multiple "red flags" that would have led them to prevent the misconduct complained of had they discharged their ordinary directorial duties in good faith.*** Specifically, what Plaintiffs have alleged, with particularity, is that Morgan Stanley's Audit Committee was aware of, and disregarded, unmistakable "red flags" regarding the same type of misconduct forming the very basis of Plaintiffs' claims, namely, disclosures concerning ARS market liquidity in 2007 and 2008, were waved in the faces of the Audit Committee in 2006, when the SEC fined and censured the Company for wrongful disclosures concerning the same subject matter. *See* Rec. Doc. 9 (Complaint) ¶¶ 4-5, 12-13, 25, 26, 28 n.3, 16, 68(h), 68(j), 70-81, 96, 97-110, 112-114, 117-120, 122-126, 127-131, 133, 199-201, 226-230, 233-234, Exh. B ¶ 22; Rec. Doc. 15 (Opposition to Motion to Dismiss) at 4-5, 17-24; Rec. Doc. 21 (Sur-Reply in Further Opposition) at 3-5. In the

10

interests of concision, we respectfully refer the Court to the referenced documents for a full discussion of this issue.

The Court, moreover, relied upon a ruling by the Honorable Leonard B. Sand in a similar case brought by plaintiffs, *Blankfein*, to hold that all of the "red flags" waved at Morgan's Board of Directors were, in fact, identified only "through the benefit of hindsight." Rec. Doc. 24 (Transcript) at 14:20. In so ruling, the Court did not address the arguments, advanced by Plaintiffs in their Sur-Reply in Further Opposition, and their Motion for Reconsideration in *Blankfein* (which was, in turn, attached as an Exhibit to the Sur-Reply in this case) that Judge Sand was wrong to analyze similar "red flags" brought to the attention of the Goldman Sachs audit committee in *Blankfein* under the rubric of whether those "red flags" put the Goldman Sachs directors on notice that "credit markets might implode." Rec. Doc. 21 (Sur-Reply in Opposition) at 3-7. As discussed in the referenced papers, Plaintiffs do not rely on the allegation that the Board disregarded "red flags" regarding the state of credit markets, but rather on "red flags" regarding ***prior instances of illegality and misconduct of the same type forming the basis for the claims***.

In sum, the Court's ruling regarding the four Audit Committee members' likelihood of liability relied on an incorrect ruling in *Blankfein* concerning the import of the particular "red flags" waved at the Morgan Stanley Audit Committee. Indeed, as Judge Sand incorrectly held that the 2006 misconduct was categorically different from the 2007-2008 misconduct, and focused on a nonissue, *viz.*, whether the "red flags" waved at the Goldman Sachs audit committee were signs that "credit markets might implode," so, too, did this Court incorrectly and too quickly rely upon Judge Sand's *Blankfein* decision to hold that similar allegations regarding Morgan Stanley's Audit Committee were also inadequate. Important points of distinction appear to have been overlooked by the Court, and these appear to have governed the Court's holding.

## **CONCLUSION**

For the reasons presented herein, this Court should reconsider its June 24, 2009 Order and reverse its holding that demand on the Morgan Stanley Board of Directors is not excused as futile—or, in the alternative, clarify its Order with a written decision addressing the arguments Plaintiffs have made with respect to the identity of the 2006 conduct compared to the 2007-2008 conduct and the errors in Judge Sand's analysis in *Blankfein*.

Dated: July 8, 2009.

    Respectfully submitted,

    KAHN SWICK & FOTI, LLC

    By:   */s/ Albert M. Myers*
    Lewis S Kahn
    Albert M. Myers (a member of the bar of this Court)
    Kevin Oufnac
    650 Poydras Street, Suite 2150
    New Orleans, LA 70130
    Tel.: (504) 455-1400
    Fax: (504) 455-1498

    Michael A. Swick (a member of the bar of this Court)
    12 East 41st Street, 12th Floor
    New York, NY 10017
    Tel.: (212) 696-3730
    Fax: (504) 455-1498

    *Attorneys for Plaintiff the Louisiana*
    *Municipal Police Employees Retirement System*

    -and-

    ROY JACOBS & ASSOCIATES
    Roy L. Jacobs (a member of the bar of this Court)
    *rjacobs@jacobsclasslaw.com*
    60 East 42nd Street
    New York, NY 10165
    Telephone: (212) 685-0969
    Facsimile: (212) 685-2306

        PASKOWITZ & ASSOCIATES
Laurence D. Paskowitz (a member of the bar of this Court)
*classattorney@aol.com*
60 East 42nd Street
New York, NY  10165
Telephone:  (212) 685-0969
Facsimile:  (212) 685-2306

*Attorneys for Plaintiff Terry G. Thomas*

13

## **CERTIFICATE OF SERVICE**

I certify that on April 14, 2009, I electronically filed the foregoing Memorandum of Law in Support of Motion for Reconsideration with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

       /s/ Albert M. Myers
Albert M. Myers, Esq.
Kahn Swick & Foti, LLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Tel.: (504) 455-1400
Fax: (504) 455-1498